UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


UNITED STATES OF AMERICA,

    Plaintiff,

v.                                             Case No. 3:11cr24/MCR

**TELLY J. HILL, a/k/a "Tally,"**
**ERICK D. SMITH, a/k/a "Tator,"**
**and ISMAEL A. RODRIGUES,**

    Defendants.

_____/

## ORDER ON MOTION TO SUPPRESS

The second superseding indictment (doc. 54) charges Defendant Erik D. Smith ("Smith") with conspiracy to distribute and possess with intent to distribute cocaine and cocaine base ("crack"), along with various money laundering and firearms charges. The charges were based on an investigation into Smith's alleged drug distribution organization undertaken by the Pensacola Police Department, the Escambia County Sheriff's Office, and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

Smith has filed a motion to suppress evidence seized during the execution of a search warrant (doc. 47).[1] He asserts there was no probable cause for the search (doc. 48). The Government opposes the motion (doc. 51). The court has determined that no evidentiary hearing is necessary and that the motion is due to be denied for the following reasons.

---

[1] Smith's Motion to Suppress regards evidence seized from two addresses – 7611 Aaron Drive and 8101 Tippin Avenue – pursuant to federal search warrants; however, because the Government does not intend to utilize any evidence seized from 7611 Aaron Drive against Smith, the issue of suppression regarding that evidence is moot. Therefore, the court will consider the motion only as it relates to the Tippin Avenue residence.

Case No. 3:11cr24/MCR

**Background**

On April 12, 2011, ATF Special Agent Allen Davis, applied for a federal warrant to search 8101 Tippin Avenue, Apartment L. Special Agent Davis attested to the following facts in his affidavit. On November 3, 2010, he met individually with two cooperating defendants, both of whom positively identified Smith through a photographic line-up as the primary source for cocaine in the Lincoln Park area of Pensacola, Florida. The cooperating defendants also each reported that Smith acquires the cocaine from "Mexican males" in Foley, Alabama, and that he frequently carries a firearm in furtherance of his drug trafficking operation. In late November, this information was corroborated by Telly Hill, an alleged confederate of Smith, after Hill was arrested on drug charges. Additionally, an ATF Confidential Informant identified multiple co-conspirators as members of Smith's organization and directed Special Agent Davis to three drug "stash houses" purportedly used by Smith in the Lincoln Park area of Pensacola.

The affidavit further describes Special Agent Davis's recent surveillance of the defendant. This included observing Smith travel to and from 8101 Tippin Avenue over a one week period in January 2011 in order to confirm Smith's active residence.[2] During that period, Smith traveled from 8101 Tippin Avenue to a purported drug "stash house," met with convicted drug felons, and traveled to a state courthouse in Foley, Alabama, to pay a fine for a drug-related offense. In a second round of surveillance on April 7, 2011, Smith was seen at 8101 Tippin Avenue discarding his trash. After Smith and a known drug felon departed the residence, law enforcement obtained the trash, which contained a small amount of marijuana.

The affidavit states that despite the fact that Smith appeared to have no legitimate source of income, Smith and his associates spent in excess of $25,000 to purchase vehicles, and records obtained from Biloxi, Mississippi, casinos showed that between July 2010 and February 2011, Smith lost over $70,000 gambling. Additionally, pictures from Smith's Facebook profile depict Smith in possession of, and displaying, large quantities of

---

[2]The Florida Driver and Vehicle Information Database reported that Smith had identified his residence as 8101 Tippin Avenue, Apartment L.

Case No. 3:11cr24/MCR

cash.  The affidavit also listed Smith's criminal history, which included two prior drug convictions.

**Discussion**

A. Probable cause for the search warrant existed

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  For a search warrant to be valid under Fourth Amendment principles, it must be supported by probable cause, which means that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Tate*, 586 F.3d 936, 942-43 (11th Cir. 2009) (internal marks omitted)*, cert. denied*, 131 S. Ct. 634 (2010).  As the term implies, "probable cause" deals with probabilities and practical considerations, not technical precision.  *Illinois v. Gates*, 462 U.S. 213, 231 (1983).  Courts view the determination of probable cause by considering the totality of the circumstances through "the practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.*  The search warrant affidavit must contain "facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched," *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002), but, "a presumption of validity" attaches to an affidavit supporting a search warrant, *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

The contents of the affidavit are evaluated to determine whether there is a connection between the defendant and the location to be searched, as well as a link between the location and the suspected criminal activity.  *See Martin*, 297 F.3d at 1314.  The justification for allowing a search of a suspect's residence is "'the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and which privacy is nevertheless maintained.'" *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (quoting *United States v.*

*Green*, 634 F.2d 222, 226 (5th Cir. 1981)),[3] *cert. denied*, 130 S. Ct. 1315 (2010)*.* Normally, "few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime." *Id*. (internal marks omitted); *see also United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008) (evidence of possession of contraband of type normally expected to be hidden in residence will support search), *cert. denied*, 129 S. Ct. 2033 (2009). *But see Green*, 634 F.2d at 226 (holding the convenience of defendant's residence "for use as a place to plan and hide fruits of the crime [was] diminished, if not eliminated" where alleged crime took place thousands of miles from home in absence of other evidence linking residence and the criminal activity).

Smith argues that suppression is warranted because there was no probable cause for the search. The court disagrees and finds that the search warrant affidavit articulated a fair probability relevant evidence would be present at the residence. Law enforcement had multiple cooperating witnesses all of whom confirmed that Smith was the head of a cocaine distribution operation; financial documentation further corroborated Smith as the leader of an organization procuring illegal funds; and surveillance operations linked Smith to known drug offenders and suspected "stash houses." Additionally, in making the probable cause determination, the issuing judge was justified in considering Smith's criminal history along with the evidence of his recent conduct which, in the affiant's experience, was consistent with drug dealing activity. *See United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).

Clearly there was a sufficient nexus between Smith and 8101 Tippin Avenue, Apartment L – the Florida Driver and Vehicle Database indicates that Smith himself listed this address as his residence. The warrant application also demonstrated a sufficient nexus between the residence and Smith's alleged drug dealing activities. Unlike *Green* where the suspected crimes took place on the other side of the country, here, the defendant's suspected crimes were in close proximity to his residence. In fact, law

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

enforcement officers observed Smith traveling between the residence and suspected "stash houses," and known drug offenders frequented the residence. Furthermore, courts have held that "trash pulls" yielding small amounts of illicit drugs, at least when coupled with other evidence, can establish probable cause for the issuance of a search warrant. *See United States v. Akel*, 337 Fed. Appx. 843, 858 (11th Cir. 2009) (unpublished); *see also United States v. Martin*, 526 F.3d 926, 937 (6th Cir.), *cert. denied*, 129 S. Ct. 305 (2008)*; United States v. Timley*, 443 F.3d 615, 624 (8th Cir.), *cert. denied*, 549 U.S. 889 (2006). The totality of these circumstances sufficiently raises a fair probability that Smith was storing drugs and/or proceeds at the residence. *See United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir.) (noting a nexus may be established from the circumstances involved even without direct observation), *cert. denied*, 498 U.S. 901 (1990); *see also United States v. Ellison*, 632 F.3d 347, 349-50 (6th Cir. 2011) (finding probable cause where a confidential informant had observed participants to a drug deal coming out of or returning to the house searched). The court finds that a sufficient nexus has been established between the defendant, the residence, and the criminal activity to support the finding of probable cause to search.

B. The good faith exception would apply

Although Supreme Court precedent has established an exclusionary rule forbidding the use at trial of evidence obtained in violation of the Fourth Amendment in certain circumstances, *see Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 699 (2009), there exists a good faith exception to the exclusionary rule, s*ee United States v. Leon*, 468 U.S. 897, 922 (1984). Under the *Leon* good faith exception, "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *Martin*, 297 F.3d at 1313. In deciding whether the exclusionary rule applies, the court considers whether the officers involved acted with "objective reasonableness." *Herring*, 129 S. Ct. at 699-700 (citing *Leon*, 468 U.S. at 923 n.24). To warrant exclusion, the officer's conduct must not be merely negligent, but "deliberate, reckless, or grossly negligent," *id.* at 702, because the rule operates as a judicially designed remedy "to safeguard Fourth

Amendment rights generally through its deterrent effect," *Leon*, 468 U.S. at 906.  In undertaking this analysis, the court is mindful of the Supreme Court's instruction that exclusion should be "our last resort, not our first impulse."  *Herring*, 129 S. Ct. at 700.

The Government argues that the *Leon* good faith exception applies because even if the court finds probable cause to be lacking, the officers executed the search warrant in good faith, and their reliance on the search warrant was objectively reasonable.  Smith makes no argument that the good faith exception does not apply in this case, and the court's review of the record provides no basis for concluding that the officers did not reasonably rely on the search warrant in executing the search.  Therefore, suppression is not warranted even assuming the affidavit did not present sufficient facts from which to conclude there was probable cause to search.  Accordingly, there is no basis for excluding the physical evidence seized from 8101 Tippin Avenue, Apartment L.

For the foregoing reasons, it is hereby ORDERED that Defendant's motion to suppress evidence seized through a search of his residence (doc. 47) is DENIED.

**DONE AND ORDERED on this 26th day of May, 2011.**

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**United States District Judge**